**UNITED STATES of America, Appellee,**

v.

**Norbert L. HILDEBRANDT, Appellant.**

No. 91–2360.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 13, 1991.
Decided April 3, 1992.

Andrea K. George, Asst. Federal Defender, Minneapolis, Mn., argued, for appellant.

Judy Hallett and Jeffrey S. Paulsen, Asst. U.S. Attys., Minneapolis, Mn., argued, for appellee.

Before JOHN R. GIBSON, Circuit Judge, FRIEDMAN,* Senior Circuit Judge, and MAGILL, Circuit Judge.

* The Honorable Daniel M. Friedman, Senior Cir-      cuit Judge for the United States Court of Ap-

JOHN R. GIBSON, Circuit Judge.

Norbert L. Hildebrandt appeals both the judgment and his sentence following his conviction of two counts of submitting false statements to a government agency in violation of 18 U.S.C. § 1001 (1988). The charges were based on Hildebrandt's sending to the IRS false forms claiming that he had paid various individuals large sums of money. On appeal, Hildebrandt argues that: (1) the district court[1] committed reversible error by failing to instruct the jury that a subjective good faith belief that one is not violating the law negates the willfulness element of section 1001; (2) the district court erred by excluding certain evidence as hearsay; and (3) the district court erred by imposing a three-level enhancement under the sentencing guidelines on the ground that Hildebrandt's victims were "official victims." We affirm the judgment of the district court.

Hildebrandt was a Minnesota farmer who had serious financial troubles during the 1980s. When the bank that had acted as his lender stopped covering checks for which he lacked sufficient funds and also stopped extending him additional credit, Hildebrandt could not keep up the payments on his farm. The State of Minnesota, which held the mortgage, then foreclosed on his property.

Hildebrandt then discovered the teachings of one Roger Elvick, who sold tapes and other materials that informed farmers about their supposed legal rights. Hildebrandt obtained a package of taped and written materials called "Introduction to Redemption."

Following Elvick's teachings, Hildebrandt sent IRS Form 1099 to various individuals whom he believed had conspired to take away his farm and deprive him of his legal rights. Recipients included law enforcement personnel, judges, lenders, attorneys, and creditors who had been involved in some fashion with the foreclosure on Hildebrandt's farm or with other legal proceedings involving Hildebrandt.[2]

IRS Form 1099 is used to report non-wage compensation. Hildebrandt, calculating "all of the damages that had incurred to me and my family through the denial of my rights," treated these losses as the taxable gain of his victims. For instance, law enforcement officers who had enforced court orders against him and judges who had ruled adversely to him received 1099 forms stating that they had received various sums of money from Hildebrandt as non-wage compensation.

Twice in 1989, Hildebrandt filed false 1099 forms with the IRS. With both filings, he included a cover sheet, Form 1096, which summarized the information contained in the attached 1099 forms. On these forms, Hildebrandt claimed to have paid a total of about $68,000,000 in non-wage compensation. He also signed a statement on one of the 1096 forms stating that "under penalties of perjury" he declared that he had "examined this return and accompanying documents" and that to the best of his "knowledge and belief they are true, correct, and complete."

The IRS uses computers to compare the data reported on a particular Form 1099 with the tax return of the individual who purportedly received the income reported on the 1099. Tax examiners investigate any discrepancy between the two forms. Taxpayers bear the burden of explaining any such discrepancy.

Hildebrandt testified at trial that he believed the forms he filed were not false and that he had a legal duty to file them. He further testified that he expected the IRS to collect the taxes due on the income he had reported on the 1099 forms. Based on his sending the false 1096 and 1099 forms to the IRS, a jury convicted Hildebrandt on

---

peals for the Federal Circuit sitting by designation.

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

2. We have recently considered the appeals of other individuals who were involved in the

sending of false 1099 forms. *See United States v. Yagow,* 953 F.2d 423 (8th Cir.1992); *United States v. Citrowske,* 951 F.2d 899 (8th Cir.1991); *United States v. Telemaque,* 934 F.2d 169 (8th Cir.1991).

two counts of knowingly and willfully making false statements to a government agency in violation of 18 U.S.C. § 1001. The court sentenced him to one year in prison followed by a two-year period of supervised release.

## I.

■ Hildebrandt asserts that the district court committed reversible error by failing to give a "good faith" defense instruction[3] based on the Supreme Court's recent decision in *Cheek v. United States*, —— U.S. ——, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991).

A jury convicted the defendant in *Cheek* of willfully failing to file federal income tax returns and willfully attempting to evade income taxes. The Supreme Court held that the district court erred by instructing the jury to disregard evidence that Cheek believed that he was not required to file a return or pay income taxes. *Id.* 111 S.Ct. at 611. A defendant's good faith belief that he is not violating the tax laws negates the statutory willfulness requirement, whether or not that good faith belief is objectively reasonable. *Id.* Although ignorance of the law traditionally is no defense, Congress has carved out an exception to that rule in certain criminal tax statutes by making "specific intent to violate the law" one of the elements. *Id.* 111 S.Ct. at 609. Such special treatment is largely premised on the "complexity of the tax laws," which have so proliferated that the average citizen may have difficulty "comprehend[ing] the extent of [his] duties and obligations." *Id.*

Although *Cheek* did not address whether its holding extends beyond the criminal tax context, its statement that certain criminal tax offenses are accorded "special treat-ment" because of the complexity of the tax laws strongly suggests that its holding is limited to the tax area. In *United States v. Dashney*, 937 F.2d 532 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991), the Tenth Circuit refused to apply *Cheek* to violations of currency reporting statutes, drawing a distinction between the complexity of tax statutes and the "straightforward currency reporting requirements." *Id.* at 540.

We believe a similar distinction exists here. The statutes at issue in *Cheek* required a "willful[ ] attempt[ ] ... to evade or defeat any tax," 26 U.S.C. § 7201 (1988), and a "willful[ ] fail[ure]" to file a required tax return, 26 U.S.C.A. § 7203 (West Supp. 1991). The Court defined willfulness in this context as the voluntary and intentional violation of a known legal duty. 111 S.Ct. at 610. The government must prove that the defendant knew of his duty, and its effort fails "if the jury credits [the defendant's submission] of a good faith misunderstanding and belief." *Id.* at 611.

■ In contrast, 18 U.S.C. § 1001 concerns not a willful failure to act, but the willful doing of a prohibited act. To violate section 1001 in the manner relevant here, the defendant must knowingly and willfully make a material, false statement in any matter within a government agency's jurisdiction.[4] In the context of this statute, the term "willful" simply means that the defendant did the forbidden act " 'deliberately and with knowledge.' " *United States v. Carrier*, 654 F.2d 559, 561 (9th Cir.1981) (citation omitted). *See also Manual of Model Criminal Instructions for the District Courts of the Eighth Circuit* 205 (1989) ("willfully" as used in section 1001 is generally defined as "deliberately" or "deliberately with knowledge"). It is not nec-

---

**3.** Hildebrandt submitted a proposed instruction that stated:

    Willfulness is defined as a voluntary, intentional violation of a known legal duty.

    A good faith misunderstanding of the law or a good faith belief that one is not violating the law negates willfulness, whether or not the claimed belief or misunderstanding is objectively reasonable.

**4.** 18 U.S.C. § 1001 states:

    Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

essary that the defendant act with the intent to deceive the United States or have actual knowledge that the statement was made in a matter within a federal agency's jurisdiction. *United States v. Yermian,* 468 U.S. 63, 68–74, 104 S.Ct. 2936, 2939–42, 82 L.Ed.2d 53 (1984). The phrase "knowingly and willfully" modifies the terms "false statement" and is not relevant to the statute's jurisdictional element. *Id.*

The district court here instructed the jury that to convict the defendant it must find that: (1) he "knowingly made or used a false, fictitious, fraudulent writing or document in submitting 1989 Forms 1096 and 1099 to the IRS"; (2) "[a]t the time [he] did so, he knew that the forms contained a false, fictitious or fraudulent statement"; and (3) "[he] did these acts knowingly, voluntarily and intentionally."

We conclude that these instructions correctly conveyed the substance of the relevant law and that the district court did not err by refusing an instruction based on the Supreme Court's holding in *Cheek.*

Hildebrandt also argues that even if section 1001 does not on its face invite an application of *Cheek,* that a *Cheek* instruction is nonetheless required here because his case arises from a tax matter.

We reject this argument. The *Cheek* holding was premised on the complexity of the tax laws, and Hildebrandt was convicted under a general criminal statute containing a straightforward prohibition against making false, fictitious, or fraudulent statements to the government. If *Cheek* is to be expanded, that expansion must be made by the Supreme Court.

## II.

■ Hildebrandt next argues that the district court improperly excluded as hearsay written materials upon which he relied in submitting the 1099 forms. These materials included portions of Elvick's "Redemption Package."

The record shows that the government later withdrew its objection. Hildebrandt then failed to offer the exhibits again and, in fact, withdrew his offer. We are not persuaded by Hildebrandt's argument that the government's withdrawal of its objection came so late in the trial that the introduction of the exhibits at that point would have confused the jurors. If Hildebrandt was prejudiced by the exclusion of these written materials, it was due to his own failure to offer them. There was no reversible error.

## III.

■ Finally, Hildebrandt argues that the district court improperly imposed a three-level enhancement under United States Sentencing Guideline § 3A1.2 (1990) on the basis that the victims of his crime were "official victims" within the meaning of that guideline. Because he was convicted only for his actions against the IRS—which, under section 3A1.2, cannot be considered an individual victim—he argues that the district court erred by basing the enhancement on the fact that many of the recipients of the 1099 forms were "officials" within the meaning of section 3A1.2.

Hildebrandt's argument ignores the fact that the government prosecuted him for statements made to the IRS claiming that these individuals had received substantial amounts of non-wage income when, in fact, they had not. Because the IRS investigates any discrepancy between the amounts reported on 1099 forms and an individual's tax returns, Hildebrandt's sending of the forms to the IRS certainly had the effect of making these individuals his victims. We thus conclude that the district court properly interpreted the scope of the guideline and did not err by imposing the three-level enhancement. The sentence imposed for this offense was modest.

For the foregoing reasons, we affirm the judgment of the district court.