# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 14, 2015          Decided January 12, 2016

No. 14-3046

UNITED STATES OF AMERICA,
APPELLEE

v.

STEPHEN C. HUNTER,
APPELLANT

———

Consolidated with 14-3047, 14-3048

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:08-cr-00271-2)
(No. 1:08-cr-00271-5)
(No. 1:08-cr-00271-3)

———

*Mary E. Davis*, appointed by the court, argued the cause for the appellant. *Paul S. Rosenzweig* and *Edward C. Sussman*, appointed by the court, were with her on brief.

*Mark S. Determan*, Attorney, United States Department of Justice, argued the cause for the appellee. *Vincent H. Cohen*, *Jr.*, Acting United States Attorney, *Frank P. Cihlar*, Chief, and *Gregory Victor Davis*, Attorney, were with him on

brief. *Elizabeth Trosman*, Assistant United States Attorney, entered an appearance.

Before: HENDERSON, ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Stephen Hunter, Allan Tanguay and Danny True (appellants) were convicted of mail fraud and conspiracy to defraud the United States in violation of 18 U.S.C. §§ 371, 1341, 1342. They all received sentences below the applicable range of the United States Sentencing Guidelines (Guidelines). In an earlier appeal, we held that the district court improperly applied a three-level upward adjustment computed under the Guidelines and remanded for resentencing. *United States v. Hunter*, 554 F. App'x 5, 11 (D.C. Cir. 2014). On remand the district court imposed the same sentences. The appellants now argue that the district court exceeded its authority on remand and that the sentences were procedurally infirm. We disagree and affirm.

I.

The appellants, along with Eddie Ray Kahn, operated an organization known as American Rights Litigators that promoted and sold tax defiance schemes. Kahn was the ringleader and the three appellants were his employees. The three appellants were sentenced to 120 months' imprisonment on the mail fraud charges and 60 months' imprisonment for conspiracy, to run concurrently. Kahn received concurrent terms of 240 and 60 months, respectively.

Kahn's total offense level was 42. His base offense level was 7, U.S.S.G. § 2B1.1(a) (2010), and he received a 22-point enhancement for an intended loss amount over $20 million. *Id.* § 2B1.1(b)(1)(L). In addition, he received a 3-point

official victim enhancement, *id.* § 3A1.2, a 4-point enhancement as the leader of a criminal activity involving five or more participants, *id.* § 3B1.1(a), and a 2-point enhancement for each of: (1) misrepresentation of a religious organization in violation of an injunction, *id.* § 2B1.1(b)(8), (2) commission of a crime through mass marketing, *id.* § 2B1.1(b)(2), and (3) use of sophisticated means, *id.* § 2B1.1(b)(9). Finally, Kahn's criminal history category of 2 combined with the 42 point offense level produced an advisory sentencing range of 360 months to life imprisonment. *See id.* ch. 5 pt. A (table). Because the statutory maximum for mail fraud is 20 years, 18 U.S.C. § 1341, he was sentenced to the shorter 240-month term of imprisonment. The conspiracy count, 18 U.S.C. § 371, carried a maximum of five years, which the court ordered to run concurrently.

The Guidelines range was similar for the appellants. The base offense level (7), intended loss enhancement (22), mass marketing (2), misrepresentation (2), sophistication (2) and official victim (3) enhancements were the same as for Kahn. The appellants were all given a 3-point enhancement as "manager(s) or supervisor(s)" of a criminal enterprise, U.S.S.G. § 3B1.1(b) (2010), and a 2-point enhancement that Kahn did not receive for obstruction of justice, *id.* § 3C1.1. All three appellants had a criminal history category of 1, which, together with their 43-point offense level, resulted in a Guidelines range of life imprisonment. *See id.* ch. 5 pt. A (table).

Although the statutory cap for mail fraud reduced the maximum sentence to 20 years, the district judge varied further downward and imposed 120-month sentences, with 60

months for conspiracy to run concurrently.[1]   The judge viewed the appellants more favorably than he did Kahn because, "despite their professions of continuing to adhere to whether or not their contact [sic] was lawful, they have no question suffered, and their families have suffered." Sentencing Tr. 115.   He also observed that the downward variance was warranted because they "were good family men, religious men who lived good lives." *Id.* at 116.

In their first appeal, the appellants challenged, *inter alia*, the 3-point managerial enhancement and we vacated it because "the government . . . failed to carry its burden of showing that the three-level enhancement . . . applie[d]." *Hunter*, 554 F. App'x. at 11.  With the three-point managerial enhancement excised, the adjusted offense level of 40— coupled with a criminal history category of 1—resulted in a Guidelines range of 292–365 months' imprisonment.  *See* U.S.S.G. ch. 5 pt. A (table) (2010).   Notwithstanding the appellants' 120-month sentences remained below this range, we "remanded to the district court for resentencing," *Hunter*, 554 F. App'x at 6, in part because the government had not pursued a timely harmless-error argument. *Id.* at 11–12.

On remand, the district court requested briefing on whether the managerial enhancement could still apply, and the government conceded that it did not based on law of the case.  *See* Mem. Regarding Scope of Resentencing; *United States v. Leonzo*, 50 F.3d 1086, 1088 (D.C. Cir. 1995) (government ordinarily "should [not] get a second bite at the apple").  It nonetheless sought reimposition of the 120-month sentences based on (1) a Guidelines range that still exceeded

---

[1]   The judge also ordered each appellant to pay a $25,000 fine—the statutory minimum.  He entered stays on the collection thereof from all three appellants.

10 years, (2) the court's previous consideration of their good character that had already resulted in a downward variance and (3) subsequent criminal convictions of the appellants' former clients—the "legacy of the seeds that the [appellants] planted." Resentencing Tr. 9. In particular, the government alleged that the appellants' scheme resulted in thirteen subsequent tax-related convictions of their former clients, eight of which required jury trials.

All three appellants argued that they had been rehabilitated since their original sentencing. Although the judge "recognize[d] . . . how much [the appellants] ha[d] strived to do the right thing during [their] period of incarceration . . . that's what [he] expected of all three" from the beginning. *Id.* at 32–33. He also noted that he had not "valued sufficiently the serious nature of the offense . . . committed" and that "the consequence to the tax system and to all the people that relied on the information that [the appellants] were providing [wa]s such that [he could not] go down further and really justify . . . the sentencing role of the Court." *Id.* at 33.

Before concluding the sentencing hearing, the judge asked whether there were "any additional questions from any of the [appellants]," in response to which inquiry Tanguay's lawyer requested a continued stay on the collection of fines, *see supra* n.1, and an expedition of paperwork for the appellants to "go back to the institution." Resentencing Tr. 36. After granting both requests, the judge again asked: "Any other matters the defense wants to raise" to which there was no response. *Id.* at 37.

The appellants now appeal, contending that the district court exceeded its authority on remand by reconsidering facts known at the original sentencing and insufficiently factoring

in the vacated managerial enhancement. They also challenge their sentences as procedurally unreasonable, claiming the district court failed to address their rehabilitation arguments and inadequately explained the sentences.[2]

## II.

Barring our "express instructions" to the contrary, the district court has limited authority at resentencing and may take into account only a narrow range of circumstances. *See United States v. Blackson*, 709 F.3d 36, 40 (D.C. Cir. 2013). In short, the district court "generally does not have authority to resentence a defendant de novo." *Id.*[3] Rather, on remand,

---

[2] In addition, they contend that their sentences were substantively unreasonable because "the district court gave no consideration to any . . . factor[s] raised by appellants." Appellants' Br. 21. This argument simply recycles their procedural claims. They also urge that application of the loss enhancement was improper. We upheld the enhancement on the first appeal, s*ee Hunter*, 554 F. App'x. at 10 ("[A]ppellants challenge the district court's finding at sentencing that they are responsible for an intended loss of $42.7 million . . . that corresponds to a 22-level increase in their total offense level . . . . [Their] arguments are meritless."), and law of the case bars its reconsideration. *See, e.g.*, *United States v. Thomas*, 572 F.3d 945, 948 (D.C. Cir. 2009).

[3] We note vacatur of the appellants' sentences, *Hunter*, 554 F. App'x at 6, does not constitute "express instructions" to conduct *de novo* resentencing. *Blackson*, 709 F.3d at 40. It is plain from our *Hunter* opinion that *only* the managerial enhancement required remand. *Hunter*, 554 F. App'x at 11 ("The joint appellants' most meritorious argument—and the only one that requires us to remand—is that the district court improperly applied a three-level [managerial enhancement]."). Vacatur is one way a district court, on remand, can reconfigure a sentencing plan, *Blackson*, 709 F.3d at 41, but does not, by itself, "permit[] [the court] to reconsider issues that were not in any way related to this court's vacatur of

it considers whether the vacated count (or here, enhancement) "affected the overall sentence and, if so, [whether it] should reconsider the original sentence imposed," it may hear "new arguments or new facts as are made newly relevant by [our] decision—whether by the reasoning or by the result" and it may consider "facts that did not exist at the time of the original sentencing," including "rehabilitation efforts that the defendant ha[s] undertaken since receiving [the] original sentence." *Id.*[4] Whether the district court followed these instructions is a legal question we review *de novo*. *See id.* at 42–44; *United States v. Day*, 524 F.3d 1361, 1367 (D.C. Cir. 2008) (*de novo* review of sentencing decision involving "[p]urely legal questions"). In contrast, we review procedural reasonableness for "abuse of discretion." *United States v. Wilson*, 605 F.3d 985, 1034 (D.C. Cir. 2010). And "where a defendant fails to raise a claim at his sentencing hearing," we review for plain error only. *United States v. Locke*, 664 F.3d 353, 357 (D.C. Cir. 2011); *see also* FED. R. CRIM. P. 52(a).

---

the" count or enhancement. *Id.* (internal quotation marks omitted). Thus, there is no reason to "rely now upon the technical distinction between vacatur and remand—to which we attached no apparent significance at the time [of the first appeal]." *United States v. Whren*, 111 F.3d 956, 959 (D.C. Cir. 1997).

[4] We have also recognized two other narrow resentencing circumstances not relevant here. First, under FED. R. CRIM. P. 52(b), " 'the resentencing court may consider even an issue raised belatedly' if it constitutes plain error." *Blackson*, 709 F.3d at 40 n.2 (quoting *Whren*, 111 F.3d at 960). Second, "the resentencing court may consider arguments not raised at the original sentencing when the argument's relevance to the sentence was contingent on a circumstance that did not materialize at the original sentencing but that did come to pass by the time resentencing occurred, and where the defendant establishes good cause for not having raised the argument sooner." *Id.*

## A.  PLAIN ERROR

Although this appeal does not depend on the application of plain error review, we nonetheless believe it helpful to clarify Circuit law on this issue.  As we explained in *Locke*, the "more demanding plain error standard of review applies where a defendant fails to raise a claim at his sentencing hearing," unless the defendant was given no opportunity to object.  664 F.3d at 357; *see also* FED R. CRIM. P. 51(b) ("If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party.").  In *Locke*, after imposing sentence, the judge asked the parties if they "know of any reason other than reasons already stated and argued why the sentence should not be imposed as I have just indicated" and counsel responded "[n]othing else, [y]our Honor."  *Locke*, 664 F.3d at 357 (alteration in original).  Based on this exchange, we concluded in *Locke* that it was "not a case in which the defendant was given no opportunity to object" and consequently applied plain error review.  *Id.*

Here the judge used a similar prompt after imposing the sentences.  *See* Resentencing Tr. 36 ("Are there any additional questions from any of the [appellants]?"); *id.* at 37 ("Any other matters the defense wants to raise?").  The appellants nonetheless contend that they had no opportunity to object because "[f]rom the timing and context of the proceedings it is clear that the court's questions dealt with matters other than the sentence."  Appellants' Reply Br. 5.  The "timing and context of the proceedings," however, were the same in *Locke*—each judge had just imposed the sentences and explained his rationale.  *See Locke*, 664 F.3d at 357; Resentencing Tr. 32–36.  The appellants nonetheless argue that "[t]he question in *Locke* was specific to the sentence." Appellants' Reply Br. 4.  If the appellants mean to

claim that the judge must explicitly refer to the "sentence" in his inquiry, *see Locke*, 664 F.3d at 357, we emphasize that "[s]entencing . . . is not a game of Simon Says." *See United States v. Brinson-Scott*, 714 F.3d 616, 626 (D.C. Cir. 2013). Once the court makes clear by timing (here, post-imposition) or by express reference (as in *Locke*) that the defendant's opportunity to object is nigh, that is all that is required. *See, e.g.*, *United States v. Steele*, 603 F.3d 803, 807 (10th Cir. 2010). Granted, the *Locke* inquiry differed in that the judge asked whether the parties "kn[e]w of any reason other than reasons already stated and argued" for a different sentence, but that question is materially similar to the inquiry here—albeit more formal. *See* Resentencing Tr. 36–37 (soliciting "any *additional* questions" and "[a]ny *other* matters") (emphasis added).

Some of our sister circuits disagree and impose an affirmative burden on the sentencing judge to elicit objections. *See United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004) (district court must "after pronouncing the defendant's sentence . . . ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised"); *United States v. Jones*, 899 F.2d 1097, 1102 (11th Cir. 1990) ("[D]istrict courts [must] elicit fully articulated objections, following imposition of sentence, to the court's ultimate findings of fact and conclusions of law."); *see also United States v. Campbell*, 473 F.3d 1345, 1348 (11th Cir. 2007) (merely inquiring "anything further?" or "anything else?" does not satisfy court's duty). *But see United States v. Flores-Mejia*, 759 F.3d 253, 258 n.8 (3d Cir. 2014) (en banc) ("[W]e encourage district courts at sentencing to inquire of counsel whether there are any objections to procedural matters. However . . . we will not make this a requirement that district judges must follow. We believe that the burden of objecting to errors remains with the parties."

(internal citations omitted)); *United States v. Vanderwerfhorst*, 576 F.3d 929, 934 (9th Cir. 2009) ("We have never adopted such a requirement and reject it here."). Other courts have concluded that FED. R. CRIM. P. 51 "does not require a litigant to complain about a judicial choice after it has been made," *United States v. Lynn*, 592 F.3d 572, 578 (4th Cir. 2010) (internal quotation marks omitted), and have declined to apply plain error review if the objections were apparent to the court *before* imposing sentence. *Id.* at 578–79.[5]

Other courts have concluded these purposes can be met only by seeking affirmative objections through careful prompts, *see United States v. Batti*, 631 F.3d 371, 379 n.2 (6th Cir. 2011) (asking "anything else concerning sentence?" insufficient). We believe that "[c]ompetent professionals do not require such gratuitous superintendence . . . ." *Steele*, 603 F.3d at 807. Put simply, "as long as there is a fair opportunity to register an objection," but the defendant does not do so, plain error review ordinarily applies. *Id.* "[C]ounsel must take the initiative" to ensure that "silence is not mistaken for acceptance." *Id.*

Although not required for a district court to provide an opportunity to object, we believe *Locke* describes the best procedure for district judges to follow—after sentencing the judge should ask if there are any objections to the sentence imposed not already on the record. *See* 664 F.3d at 357. It allows "the [sentencing] judge to immediately remedy omissions or clarify and supplement inadequate explanations." *Flores-Mejia*, 759 F.3d at 258. The burden on

---

[5] *See also id.* at 578 (argument is preserved for appeal if raised in sentencing brief even if party fails to object when judge issues sentence without reference to argument).

the sentencing court to ensure that the parties, especially the defendant, have been heard and that the record is complete for purposes of appeal "pales in comparison to the time and resources required to correct errors through a lengthy appeal and resentencing." *Id.* And objecting to the sentence after imposition is neither pointless nor "formulaic," *see Lynn*, 592 F.3d at 578; "rather, a clear objection can enable a trial court to correct possible error in short order and without the need for an appeal." *United States v. Bennett*, 698 F.3d 194, 199 (4th Cir. 2012); *see also* 9B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2472 (3d ed. 2014) (similar).

Application of these principles here is simple; the appellants were given a fair opportunity to object, Resentencing Tr. 36 ("Are there any additional questions from any of the [appellants]?"), and they failed to do so. Thus, their claims may be properly reviewed for plain error.

## B. AUTHORITY ON REMAND

As noted earlier, on remand for resentencing the sentencing judge may ordinarily consider only limited factors. In *Blackson*, we explained that the factors include assessment of the vacatur's effect on the vacated sentence, "new arguments or new facts as are made newly relevant by the court of appeals' decision . . . [and] facts that did not exist at the time of the original sentencing." 709 F.3d at 40. The appellants contend that the sentencing judge failed to consider the effect the vacated enhancement had on the original sentence and that he erred by reconsidering the seriousness of the offense. "[U]nder either standard of review," *United States v. Stanfield*, 360 F.3d 1346, 1362 n.4 (D.C. Cir. 2004), whether plain error or *de novo*, *Day*, 524 F.3d at 1367, their arguments fail.

First, it is plain that the sentencing judge properly considered the effect of the vacated managerial enhancement. He requested briefing on whether the enhancement could apply on remand notwithstanding the vacatur and the government conceded that it could not.  In fact, the government affirmatively noted at resentencing that the appellants faced an "advisory guideline[s] range at a level 40" with a sentencing range of "292 to 365 months." Resentencing Tr. 5.  Although the district judge did not expressly state that the vacated enhancement carried "no independent weight," *cf. Blackson*, 709 F.3d at 42 ("Unfortunately for Blackson, the court concluded that it 'really was just an additional Count' that 'carried no independent weight.' " (quoting resentencing transcript)), we do not require needless recitation, especially where—as here—the sentencing judge's conclusion is plain from the record.  The appellants' original Guidelines range produced an advisory sentence of life imprisonment but they received only 120-month prison terms.  We find it obvious—and eminently reasonable—that the judge concluded that a Guidelines range that, even on the low end, nevertheless exceeded the appellants' sentences by nearly 250%, meant that the managerial enhancement "carried no independent weight." *Id.* at 42.

Indeed, we noted the potential irrelevance of the vacated enhancement in the first appeal but remanded in part because the government failed to raise a timely harmless error argument. *Hunter*, 554 F. App'x at 11 ("where, as here, the government has not timely presented a harmless-error argument, we are reluctant to raise and resolve the issue *sua sponte*").  What was not plain then is ineluctable now.  Even the appellants recognized that the Guidelines did not drive their sentences. *See* Resentencing Tr. 21 ("[R]ealistically from a guidelines point of view, nothing has changed that

much in terms of the ultimate [sentence], but this was never really a guideline case.").

The appellants also contend that the sentencing judge erroneously reconsidered the facts of the offense when he stated: "[A]s I look back on the case four years later, I'm not sure that I valued sufficiently the serious nature of the offense you committed." Sentencing Tr. 33. Applying *Blackson*, 709 F.3d at 40 (district court "authorized to consider facts that did not exist at the time of the original sentencing"), we read the statement as a response to the government's reliance on the thirteen ARL client convictions obtained after the appellants' incarceration. *See* Sentencing Tr. 33 ("[T]he consequence to the tax system and *to all the people that relied on the information that you all were providing* is such that I can't go down further." (emphasis added)). This was plainly a reason to reevaluate the seriousness of the offense and was a "fact[] that did not exist at the time of the original sentencing." *Blackson*, 709 F.3d at 40.

## C.   PROCEDURAL REASONABLENESS

Finally, the appellants maintain that their sentences were procedurally unreasonable. In particular, they contend that the district court failed to consider their post-sentencing rehabilitation argument and did not adequately explain reimposition of the original sentences.

The thrust of their argument is, and can only be, that the sentencing judge failed to adequately explain why their post-sentencing rehabilitation did not affect their sentences. This was the only argument they expressly made at resentencing in favor of a greater downward variance and it is one of the few categories of inquiry that *Blackson* permits a district court to consider at resentencing. 709 F.3d at 40 (post-sentencing rehabilitation is fact "that d[oes] not exist at the time of the

original sentencing"). If the sentencing judge adequately explained why the rehabilitation argument did not persuade him to impose lighter sentences, then—because they raise no other argument supporting a greater variance—he *a fortiori* adequately explained the reimposition of the 120-month prison terms.

Although *Blackson* couched the resentencing court's authority to consider rehabilitation in permissive language, *id*. "(authoriz[ation] to consider facts that did not exist at the time of the original sentencing"), the district court's exercise of that authority was, in this instance, mandatory. We require that a sentencing judge consider all non-frivolous reasons asserted for an alternative sentence and post-sentencing rehabilitation is, at least here, non-frivolous. *See* 18 U.S.C. § 3553(c); *Locke*, 664 F.3d at 357 (section 3553 "requires that the court provide a reasoned basis for its decision and consider all nonfrivolous reasons asserted for an alternative sentence" (internal quotation marks omitted)); *see also Pepper v. United States*, 562 U.S. 476, 491–92 (2011) (post-sentencing rehabilitation is ordinarily non-frivolous).

The sentencing judge adequately addressed the appellants' post-sentencing rehabilitation argument. He gave two reasons for rejecting their claim: first, he had already credited likely rehabilitation during the original sentencing, *see* Resentencing Tr. 32–33 ("I recognize the, [sic] how much you all have strived to do the right thing during your period of incarceration, and that's what I expected of all three of you. I recognized at the time of your original sentencing the tremendous family support you've had."); Sentencing Tr. 115–16 (observing appellants had suffered and they were "good family men, religious men who lived good lives"); and, second, the seriousness of the offense, Resentencing Tr. 33 ("But I have to say that as I look back on the case four

years later, I'm not sure that I valued sufficiently the serious nature of the offense you committed.").

As noted earlier, we interpret the sentencing judge's emphasis on the serious nature of the offense to refer to the thirteen convictions that occurred after the three appellants were incarcerated—the ripple effect of their crimes, so to speak. Because *Blackson* permits the resentencing judge to consider facts that occur after the original sentencing, 709 F.3d at 40, the judge's consideration of the ripple effect is a "reasoned basis" for reimposing the 120-month prison terms even in light of post-sentencing rehabilitation. *See Locke*, 664 F.3d at 357. Our sister circuits are in accord. *See United States v. Perez*, 564 F. App'x 504, 507–08 (11th Cir. 2014) (upholding rejection of post-sentence rehabilitation given "seriousness of [defendant's] conduct"); *United States v. Johnson*, 407 F. App'x 8, 12 (6th Cir. 2010) (post-sentencing rehabilitation "inadequate to justify a lesser sentence" given that defendant's record "require[d] a significant period of incarceration"); *United States v. Rich*, 577 F. App'x 234, 236 (4th Cir. 2014) ("nature and circumstances of [defendant's] offense" outweigh post-sentencing rehabilitation).

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*