# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 6, 2024         Decided June 28, 2024

No. 23-3046

UNITED STATES OF AMERICA,
APPELLEE

v.

TRISTAN CHANDLER STEVENS,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cr-00040-2)

*Megan J. Saillant*, Assistant Federal Public Defender, argued the cause and filed the briefs for appellant.

*T. Dietrich Hill*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Chrisellen R. Kolb* and *Elizabeth H. Danello*, Assistant U.S. Attorneys.

Before: HENDERSON, MILLETT and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*: On January 6, 2021, Tristan Stevens participated in an attack on police officers defending the United States Capitol's Lower West Terrace. The district court convicted him of, *inter alia*, four counts of feloniously assaulting and impeding police officers in violation of 18 U.S.C. § 111(a)(1) and one count of committing civil disorder in violation of 18 U.S.C. § 231(a)(3). At sentencing, the court concluded that Stevens committed the Section 111(a)(1) offenses with an intent to commit another felony: Section 231(a)(3) civil disorder. The court accordingly applied Sentencing Guideline Section 2A2.2 (Aggravated Assault) to Stevens' Section 111(a)(1) offenses. *See* U.S. SENT'G GUIDELINES MANUAL (U.S.S.G) § 2A2.2 (U.S. SENT'G COMM'N 2021).[1]

Stevens appeals his sentence, arguing that the court should have applied guideline Section 2A2.4 (Obstructing or Impeding Officers) to his four Section 111(a)(1) offenses. U.S.S.G. § 2A2.4. We disagree. We have recently held that "aggravated assault" unambiguously includes assault with intent to commit another felony and thus Section 2A2.2, not Section 2A2.4, is the applicable guideline. *See United States v. Sargent*, 2024 WL 2873106, at *4–7 (D.C. Cir. June 7, 2024). The court properly applied Section 2A2.2 to Stevens' Section 111(a)(1) offenses because his conduct constituted "felonious assault" and he acted with the "intent to commit another felony." U.S.S.G. § 2A2.2 cmt. n.1. We therefore affirm his sentence.

---

[1] All references are to the 2021 United States Sentencing Guidelines Manual—in effect at the time of Stevens' sentencing—unless marked otherwise.

## I. BACKGROUND

By statute, the U.S. Sentencing Commission (Commission) "establish[es] sentencing policies and practices for the Federal criminal justice system." 28 U.S.C. § 991(b)(1). It does so by publishing "guidelines . . . for use of a sentencing court in determining the sentence to be imposed in a criminal case" and "general policy statements regarding application of the guidelines or any other aspect of sentencing." *Id.* § 994(a)(1)–(2). The Sentencing Commission also publishes "commentary" to accompany the Guidelines. U.S.S.G. § 1B1.7. Commentary notes "may interpret the guideline or explain how it is to be applied" and "[f]ailure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal." *Id.* (citing 18 U.S.C. § 3742). The Supreme Court has instructed us to treat the guidelines as "the equivalent of legislative rules adopted by federal agencies" and guideline commentary as "an agency's interpretation of its own regulations." *Stinson v. United States*, 508 U.S. 36, 45 (1993)*.*

At sentencing, the court first looks to the sentencing range the Guidelines establish. 18 U.S.C. § 3553(a)(4). It selects the applicable guideline for a particular offense of conviction from the Guidelines' Statutory Index. U.S.S.G. § 1B1.2; *see id.* app. A. The appropriate guideline directs the court to the base offense level and any specific offense characteristics. *Id.* § 1B1.1(a)(2). The court can then adjust the offense level under various circumstances, including the victim's status and the defendant's acceptance of responsibility. *Id.* § 1B1.1(a)(3), (5). It then selects the defendant's criminal history category to determine the advisory sentence range. *Id.* § 1B1.1(a)(6), (7).

The Statutory Index often lists multiple guidelines for one offense. In that situation, the court determines which guideline

"is most appropriate for the offense conduct charged in the count of which the defendant was convicted." *Id.* § 1B1.2 cmt. n.1. The Statutory Index lists two guidelines for Section 111 convictions: Section 2A2.2 (Aggravated Assault) and Section 2A2.4 (Obstructing or Impeding Officers). U.S.S.G. app. A, at 558. Section 2A2.4 carries a base offense level of 10, which level can be enhanced based on physical contact, possession and threatened use of a dangerous weapon or bodily injury to the victim. *Id.* § 2A2.4(a)–(b). Because the base offense level already incorporates a victim's official status, Section 2A2.4 does not permit a Section 3A1.2 level enhancement. *See id.* §§ 2A2.4 cmt. n.2; 3A1.2 cmt. n.2. According to Section 2A2.4(c)'s Cross Reference, "conduct constitut[ing] aggravated assault" triggers the application of Section 2A2.2. *Id.* § 2A2.4(c)(1). Section 2A2.2 carries a base offense level of 14 with several enhancement options, including an official victim adjustment in certain circumstances.[2] *Id.* § 2A2.2(a)–(b). The commentary defines "aggravated assault" as a "felonious assault" involving, *inter alia*, "an intent to commit another felony." *Id.* § 2A2.2 cmt. n.1.

Both houses of the Congress convened on January 6, 2021 to certify the results of the 2020 presidential election.[3] Vice President Mike Pence presided over the certification. Capitol Police restricted access to the Capitol building and erected an exterior perimeter.

The Congress halted the certification process that afternoon when rioters penetrated the police perimeter. In front

---

[2] Pursuant to Section 3A1.2, the offense level increases by 6 if the victim is "a government officer or employee," the offense conduct was "motivated by such status" and the applicable guideline "is from Chapter Two, Part A (Offenses Against the Person)." U.S.S.G. § 3A1.2(a)–(b).

[3] We draw the following facts from the trial record.

of the Lower West Terrace, rioters broke through the police line and officers fell back to a narrow scaffolding tunnel (Tunnel). There they established a new defensive line. Rioters breached the Tunnel's first set of doors but the police line—equipped with riot shields—held the second set of doors. Around this time, rioters elsewhere entered the Capitol building.

Rioters in the Tunnel attacked officers with punches, metal poles and chemicals. Officers and rioters continuously pushed against each other. And rioters occasionally intensified their pushes into "heave-hos." J.A. 506. This struggle continued until around 5:00 p.m., when police officers cleared the Tunnel of rioters. With the Capitol building secured, the Congress resumed the certification process later that evening.

Earlier on January 6, 2021, Stevens attended the rally at the White House Ellipse. He then walked to the Capitol with others. Around 2:50 p.m., Stevens entered the Tunnel. He directed several of the "heave-ho" pushes against the police line before exiting. He then returned, picked up a riot shield and moved to the front. He pressed the shield against Capitol Police Officer Sergeant Aquilino Gonell's head, dislodging his face shield and exposing him to chemicals. Gonell struck back with his baton but Stevens pinned him against the wall with the shield. Stevens left the Tunnel shortly thereafter but entered one last time around 4:15 p.m. to lead another push against the police line. The officers eventually secured the Tunnel and Stevens then left the Capitol grounds.

A grand jury indicted Stevens—and eight co-defendants—on fifty-three counts. As relevant here, the Indictment charged Stevens for his assault on Gonell pursuant to 18 U.S.C. § 111(a)(1) (Count 21). It also charged Stevens with aiding and abetting the assaulting, resisting and impeding of law

enforcement officers in the Tunnel under 18 U.S.C. § 111(a)(1) (Counts 14, 16 and 33). Part of Chapter 7–Assault, 18 U.S.C. § 111(a)(1) criminalizes "forcibly" assaulting, resisting, opposing, impeding, intimidating or interfering with certain governmental officers and employees. A simple Section 111(a) assault constitutes a misdemeanor. If the conduct "involve[s] physical contact with the victim of that assault or the intent to commit another felony," the offense rises to a felony. 18 U.S.C. § 111(a). An enhanced penalty applies if the offender uses a deadly or dangerous weapon or inflicts bodily injury. *Id.* § 111(b).

Count 35 of the Indictment charged Stevens with committing civil disorder in violation of 18 U.S.C. § 231(a)(3). Part of Chapter 12–Civil Disorders, 18 U.S.C. § 231(a)(3) criminalizes "any act to obstruct, impede, or interfere with any . . . law enforcement officer" engaged in official duties "incident to and during the commission of a civil disorder." A violation of Section 231(a)(3) constitutes a felony. *Id.*

In a bench trial, the district court tried Stevens alongside co-defendants Patrick McCaughey and David Mehaffie. The court found Stevens guilty of felony assault on Count 21—a Section 111(a)(1) count—but declined to apply the enhanced penalty under Section 111(b) because the riot shield, as Stevens used it, did not constitute a deadly or dangerous weapon. The court convicted Stevens on all but one of the other nine counts charged against him.[4] With regard to the four Section 111(a)(1) charges (Counts 14, 16, 21 and 33), the court determined that Stevens committed felonies because he acted with the intent to

---

[4] The court acquitted Stevens on Count 34, Obstruction of an Official Proceeding under 18 U.S.C. § 1512(c)(2), because the government failed to prove his intent.

commit another felony—civil disorder under Section 231(a)(3).[5]

As noted *supra*, the Statutory Index lists guideline Section 2A2.2 *and* Section 2A2.4 as applicable to Section 111 convictions. U.S.S.G app. A, at 558. The district court therefore had to determine the "most appropriate [guideline] for the offense conduct" of conviction. *Id.* § 1B1.2 cmt. n.1. Stevens objected to the application of Section 2A2.2, both in his Sentencing Memorandum and at sentencing. Acknowledging that Stevens was convicted of two separate felonies—a Section 111(a)(1) felony and a Section 231(a)(3) felony—his counsel argued that they involved the same intent, that is, he violated Section 111(a)(1) but without the intent to commit *another* felony.

For the Section 111(a)(1) offenses (Counts 14, 16, 21 and 33), the district court disagreed. First, the court did not rely exclusively on the commentary definition of "aggravated assault." It also cited for support the *Black's Law Dictionary* definition of "aggravated assault"—which includes assault with "the intent to commit another crime." *Aggravated Assault*, BLACK'S LAW DICTIONARY (11th ed. 2019). The court also concluded that "another felony" need not involve completely separate conduct or intent. It noted that Stevens' Section 231(a)(3) conviction involved an element of "mob resistance to law enforcement" distinct from the "run-of-the-mill assaults on police officers" covered by Section 111(a)(1). J.A. 2208. For the Section 111(a)(1) offenses, then, the court applied

---

[5] Based on the assault on Gonell (Count 21), the court found that Stevens committed felony assault because he "act[ed] with the intent to commit civil disorder, a felony" and additionally made physical contact with the officer. J.A. 2095.

Section 2A2.2 and the official victim adjustment set forth in Section 3A1.2 to reach an adjusted offense level of 20.

For the Section 231(a)(3) offense (Count 35), the district court declined to apply the Cross Reference. Instead, it applied Section 2A2.4 and assigned an adjusted offense level of 10.[6] According to the court, the government failed to show Stevens "committed civil disorder with the intent to commit another felony." J.A. 2212. It then created two groups: Group 1 for offenses against the line officers (Counts 14, 16 and 33) and Group 2 for offenses against Sergeant Gonell (Count 21). For both groups, the highest offense level was 20. The court added 2 points for the grouping units, reaching a total adjusted offense level of 22. *See* U.S.S.G. § 3D1.4. Combined with Stevens' lack of past criminal activity, he faced a Guidelines range of 41–51 months' incarceration. The court ultimately varied upward from the Guidelines range because of Stevens' lack of remorse and a need for general deterrence, respect for law enforcement and just punishment for the offense. Stevens was sentenced to 60 months' incarceration and 24 months' supervised release.

## II. ANALYSIS

Stevens makes two challenges.[7] First, he argues assault with intent to commit another felony is not "aggravated

---

[6]  18 U.S.C. § 231 is not listed in the Statutory Index but the most analogous guideline is Section 2A2.4. *See* U.S.S.G. § 2X5.1 ("If the offense is a felony for which no guideline expressly has been promulgated, apply the most analogous offense guideline.").

[7]  Co-defendant McCaughey also appealed, challenging his conviction. *See United States v. McCaughey*, Case No. 23-3061. We consolidated McCaughey's and Stevens' appeals *ex mero motu*. After the Supreme Court granted certiorari in *Fischer v. United*

assault." Under *Kisor v. Wilkie*, 588 U.S. 558 (2019), he claims, the court should not defer to the Guidelines commentary definition of "aggravated assault." Second, he argues that his conduct does not qualify as "aggravated assault" even under the commentary definition. "We review *de novo* the district court's interpretation of the Sentencing Guidelines in calculating a defendant's Sentencing Guidelines range." *United States v. Brown*, 892 F.3d 385, 401 (D.C. Cir. 2018) (per curiam). If a defendant fails to preserve a challenge, we review for plain error. *See United States v. Hunter*, 809 F.3d 677, 681 (D.C. Cir. 2016).

## A. "Aggravated Assault"

Stevens disputes the meaning of "aggravated assault" and argues that the district court wrongly deferred to the commentary definition. We recently considered whether "aggravated assault" as defined in Section 2A2.2 includes intent to commit another felony. In *United States v. Sargent*, another January 6 defendant made the same challenge that Stevens makes. 2024 WL 2873106, at *4–7.

We rejected Sargent's arguments because "aggravated assault" in Section 2A2.2 "unambiguously encompasses Sargent's actions on January 6, 2021." *Id.* at *4. As we explained, we need not decide the proper deference standard to Guidelines commentary if "the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). Examining the text and structure of the Guidelines, the Court found that Sargent's conduct—a violation of Section 111(a)(1) with intent to commit a violation of the Section 231(a)(3) civil disorder offense—constituted

*States*, 144 S. Ct. 537 (2023) (mem.), we severed McCaughey's appeal and held it in abeyance.

aggravated assault within the meaning of Section 2A2.2. *Id.* at *5–7. The Commission, with the Congress' approval,[8] initially assigned Section 2A2.2 as the sole guideline for several offenses. *Id.* at *6. One of the specified offenses, 18 U.S.C. § 113(b) (1982), punished "[a]ssault with intent to commit any felony" within "maritime and territorial jurisdiction." *Sargent*, 2024 WL 2873106, at *6. The Congress later moved Section 113(b) to Section 113(a)(2). *Id.* Under the 2021 Guidelines, only Sections 2A2.2, 2A3.2, 2A3.3 and 2A3.4 apply to a Section 113(a)(2) violation; all but Section 2A2.2 relate to conduct involving sexual assault. U.S.S.G. app. A, at 558. Now, for any non-sexual assault committed under Section 113(a)(2) "with intent to commit another felony, the Guidelines *require* district courts to apply § 2A2.2." *Sargent*, 2024 WL 2873106, at *6 (emphasis in original). Further, *Sargent* held, Section 2A2.4 ordinarily applies to offenses involving interference with law enforcement. *Id.* It is the sole guideline applicable to over thirty offenses, none of which include the "intent to commit another felony" element. *Id.* Finally, the Commission replaced Section 2A2.3 (Minor Assault) with Section 2A2.4 in the Statutory Index reference for Section 111 offenses.[9] U.S.S.G. app. C, amend. 64 (effective Oct. 15, 1988). Thus, the Commission intended Section 2A2.4 to apply to minor assaults "while § 2A2.2 would be applied to assaults that were aggravated by other, separate factors." *Sargent*, 2024 WL 2873106, at *7. Because "'aggravated assault' plainly captures Sargent's conduct," we declined to consider what

[8] "[O]rdinarily and in practice, the commentary undergoes the same congressional and public review as the Guidelines." *Sargent*, 2024 WL 2873106, at *2.

[9] Section 2A2.3's heading referred to "Minor Assault" at the time the Commission established Section 2A2.4. U.S.S.G. § 2A2.3 (1988). The Commission omitted "Minor" in a 2014 "stylistic change that does not affect the application of § 2A2.3." U.S.S.G. suppl. to app. C, amend. 781 (effective Nov. 1, 2014).

degree of deference to accord the "aggravated assault" commentary definition. *Id.*

*Sargent*'s resolution of the "aggravated assault" commentary issue decides Stevens' challenge as well and requires us to reject his challenge. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc). The commentary definition of "aggravated assault" unambiguously covers Stevens' conduct—namely, assaulting, impeding and resisting officers under Section 111(a)(1) with an intent to commit civil disorder under Section 231(a)(3). *See Sargent*, 2024 WL 2873106, at *4.

### B. Application of Guideline Section 2A2.2

Notwithstanding "aggravated assault" includes assault with intent to commit another felony, Stevens still argues that his conduct does not constitute "aggravated assault." According to Stevens, Section 2A2.2 does not apply to him. The Guidelines commentary defines "aggravated assault" as (1) "felonious assault" that involves, *inter alia*, (2) "an intent to commit another felony." U.S.S.G. § 2A2.2 cmt. n.1. Stevens challenges both prongs' applicability. We conclude that Stevens has shown no plain error in the district court's conclusion that he committed felonious assault. We additionally find that he acted with an intent to commit another felony. Thus, the district court properly applied Section 2A2.2 to Stevens' Section 111(a)(1) convictions.

### 1. *"Felonious Assault"*

Stevens raises two arguments regarding "felonious assault": he was not *convicted* of felonious assault; and he only *aided and abetted* the resisting, opposing, impeding and interfering with police officers under Counts 14, 16 and 33. He does not similarly challenge Count 21, on which the court

convicted Stevens of felony assault of Sergeant Gonell. Stevens did not make these "felonious assault" arguments in district court and we therefore review them for plain error. *See Hunter*, 809 F.3d at 681; Fed. R. Crim. P. 52(b).[10] Stevens must show (1) an error; (2) that is plain; and (3) affects substantial rights. *Greer v. United States*, 593 U.S. 503, 507–08 (2021). If he makes this showing, we may grant relief if the error "had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Id.* at 508 (quotation omitted). A "plain" error must be "clear under current law." *United States v. Olano*, 507 U.S. 725, 734 (1993).

Stevens argues that as to the Section 111(a)(1) offenses against the line officers—Counts 14, 16 and 33—the court did not convict him of assault. The court convicted him of "[a]t the very least, . . . resisting, opposing, impeding and interfering with officers by forming a barrier to prevent them from clearing

---

[10] Stevens urges us to review this argument *de novo* because he is simply making new arguments in support of a preserved claim. *See Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim . . . ."). In *Yee*, the petitioners challenged an ordinance as a taking based on physical occupation and regulations. *Id.* at 534–35. The Court concluded that these were two "separate *arguments* in support of a single claim—that the ordinance effects an unconstitutional taking." *Id.* at 535 (emphasis in original). But Stevens makes two separate claims. At sentencing and on appeal, he has argued that he had no intent to commit "another felony." And for the first time on appeal, he argues that he "did not commit a felonious *assault*." Stevens Br. 26 (emphasis in original). Stevens has thus made two distinct claims challenging different elements of the "aggravated assault" commentary definition and we therefore review for plain error. *Cf. In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 100 (D.C. Cir. 2015) ("[O]n appeal a party may 'refine and clarify its analysis in light of the district court's ruling,' including citing 'additional support . . . .'" (citations omitted)).

the tunnel." J.A. 2075 (Oral Ruling, Sept. 13, 2022). Stevens also suggests that his aiding and abetting convictions on Counts 14, 16 and 33 prevent those counts from constituting "felonious assault." Application of the Guidelines, however, is determined by considering "all acts and omissions committed, *aided*, *abetted*, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A) (emphasis added).

Whether he personally assaulted, or aided and abetted the assaulting of, law enforcement officers, Stevens' actions— aiding other rioters whose assaults on the officers involved physical contact or the intent to commit another felony— constituted felony assault. In support of Stevens' convictions, the district court found that Stevens engaged in the heave-ho pushes in the tunnel "to aid those rioters ahead of him who were engaged with the police," J.A. 2086; the court repeatedly described those protestors as "coordinating their pushes to exert the greatest possible amount of force on the police line," J.A. 2076, "continuing to press against police," *id.*, "bringing shields and other objects to use against the police" as they entered the tunnel, J.A. 2077, and "trying to push through the officers," J.A. 2083. At sentencing, the district court explicitly found that Stevens "assaulted and impeded officers" and did so with the intent to commit another felony, rendering applicable the Guideline for aggravated assault. J.A. 2208. *See also id.* (finding that Stevens "assault[ed], obstruct[ed] and imped[ed] a line of officers").

### 2. *"Intent to Commit Another Felony"*

Stevens also argues that he had no intent to commit *another* felony at the time he violated Section 111(a)(1). He preserved this argument in his Sentencing Memorandum and at sentencing and so we review *de novo* whether the Section

231(a)(3) civil disorder offense constitutes "another felony" separate from the Section 111(a)(1) count. *See Brown*, 892 F.3d at 401. We conclude that it does.

Each of the two felonies features distinct requirements. Section 111(a)(1) requires the government to prove only that the defendant had "an intent to assault, not an intent to assault a federal officer." *United States v. Feola*, 420 U.S. 671, 684 (1975); *see also United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002). On the other hand, in Stevens' view, Section 231(a)(3) requires a "purpose of obstructing, impeding, or interfering with one or more law enforcement officers" and that the assault be committed "incident to and during a civil disorder" that affected commerce. J.A. 2133 n.3. Section 231(a)(3)'s distinct requirements qualify it as "another felony" separate from Section 111(a)(1).

Stevens cites to a commentary definition of "another felony offense" elsewhere in the Guidelines. *See* U.S.S.G. § 2K2.1 cmt. n.14(C). To whatever extent that definition informs the meaning of "another felony" in Section 2A2.2's commentary, it supports the government's interpretation. Section 2K2.1 enhances a firearm possession offense if the defendant "used or possessed any firearm in connection *with another felony offense*." U.S.S.G. § 2K2.1(b)(6)(B) (emphasis added). Some courts interpreted "another felony offense" to exclude any felonious conduct contemporaneously occurring with the base offense conduct. *See, e.g.*, *United States v. Fenton*, 309 F.3d 825, 827 (3d Cir. 2002) (a defendant convicted of violating a felon-in-possession statute based on his having stolen the firearm is not subject to the "another felony offense" enhancement based on his theft of the firearm). In response, the Commission broadened the term to apply to "any federal, state, or local offense, other than the explosive or firearms possession or trafficking [base] offense, punishable by

imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1 cmt. n.14(C); *see United States v. Keller*, 666 F.3d 103, 109 (3d Cir. 2011). Thus, any felony offense other than the base offense of conviction fits the meaning of "another felony offense." The broad commentary definition of "another felony offense" suggests that "another felony" in Section 2A2.2's commentary also carries a broad meaning.

In sum, the district court found at trial that Stevens violated Section 111(a)(1) with intent to commit civil disorder under Section 231(a)(3). Because Stevens' actions constituted felony assault and he acted with the intent to commit "another felony," the district court properly adhered to Section 2A2.4(c)(1)'s Cross Reference and applied Section 2A2.2 at Stevens' sentencing.

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*